Attorney Skyler Croy, Counsel for the Appellants, Digital Desk, and Mr. Gohm, who is here with me today, behind the bar, on to the left. Your Honors, the stakes in this case are actually very, very high. Not just for my client, but for similarly situated people in the future. And to demonstrate that point, I would just like to start by posing a hypothetical. A hypothetical that, of course, my client would never actually engage in. But let's say, for the sake of argument, that tomorrow, Digital Desk decided it needed to hire a software engineer. And it posted online on several job forums that it wanted to hire a software engineer who had a bachelor's degree. And that a bachelor's degree was a hard and fast requirement. And a black undergraduate student, who is set to graduate perhaps in a month or two here in May, applied, submitted transcripts. And that applicant was considered by Mr. Gohm and Digital Desk. And Mr. Gohm writes back, I considered your application, thank you for applying, but I decided to score applicants based on race. And my preference is to hire white software engineers, and because you have a lower score, I'm not going to hire you. I would respectfully submit that that case would have never even made it to the motion to dismiss stage. It would have settled, probably for a lot of money. Why? Because that applicant was denied, which is a stigmatizing injury, and was also denied an opportunity. Now, I understand that affirmative action is very controversial. And some people may view a distinction based on which race is facing discrimination. However, especially for standing purposes, there is no such distinction. The district court seems to have found, and it's not clear to me that the other side even argued this theory about submitting the other paperwork is the reason that your client was refused the job. Do we know if other candidates who were of the other race also failed to turn in their papers? We don't have any discovery on that, do we? No, we don't, Your Honor. And I think if I understand the question, I just want to make sure that the arguments below are clear. So the argument below that was in the motion to dismiss was actually a very narrow factual dispute. The factual dispute was whether my client had or hadn't paid taxes for the tax year 2020. And then it was a very, what I would characterize as- Actually, whether or not he had filed his tax return. Correct, whether he had filed a tax return in 2020, Your Honor. Thank you. And it was an interesting legal question, then, about what the implications were for standing. The- I don't understand why that was dispositive. Because unless, while that might have been listed as a criteria to get the job, the contract, it doesn't seem to be that you would have to show that for the other group that they also had to do that or else they couldn't be considered. Because just because it's listed as a criteria, I don't understand how that could mean that you don't have standing to So that's somewhat of a friendly question. Can you help me with that? Well, I agree completely, Your Honor. And in fact, I would just like to refer to the confirmation email that Mr. Gohm received, and it's at ROA 27, and it said, quote, if any additional information is needed to assess your application, a Lift Fund team member will contact you by phone or email. This was consistent with what the website itself said, and the website at ROA 25 noted that after the close of the application period, so specifically between January 30th and May 1st, I quote, the grant team will reach out to applicants by phone or email if additional documents or clarification is needed. If additional documents are requested, applicants will have five days to submit. So we pointed all of this out in our response brief below. It was not responded to in the reply brief below. And we, in fact, do think that that's clearly dispositive, Your Honor. I don't understand how it was proper as a 12B1 regardless, but that's a different question. I think it's for your friend on the other side. But can you, did you actually bring, you have in the second part of your brief this claim that it doesn't really even matter whether you applied, because once you go on the website, and that is a claim that is commonly made. Did you actually make that claim in this case, that regardless of whether your client applied, the stigma of the racial stigma of going on the website and seeing that you were being excluded or less, your client being less preferred, allegedly. That that itself is a claim under case law. So did you make that claim in your complaint? Your Honor, we argued that extensively below. And in particular, I believe the complaint even, and I don't have it in front of me, I apologize, Your Honor. But we do, I believe, cite students for fair admissions and the language in there about stereotyping and the harms that can come from that. And I would also say, Your Honor, that the pleading standards are obviously quite liberal. And in response to the motion to dismiss, we briefed stigmatic injury quite extensively. And it was addressed in the opinion below by the district court, but it only got about one paragraph worth of attention. That came after an analysis about the opportunity injury. And in our view, Your Honor, we think that there was a conflation between opportunity injury and stigmatic injury below. You plead those as two separate complaints? I'm looking at your complaint. Did you plead those as two different things? I believe the complaint, Your Honor, was just a short and plain statement of the facts. I don't believe it got into specifics of the injury. But I do believe there were references in there to stereotyping, and I'm happy to try to find some of those and address them on the bottom. Would you ask to amend your complaint if that was not clear to the district court about the stigma? We did not ask to amend, Your Honor. But again, it was addressed below in the district court opinion itself. There was not an argument or there was not reasoning from the district court that we had insufficiently pled on those grounds. I think Judge Ramirez has a question. I'm sorry, Your Honor. This was a 12B1 challenge, correct? That's correct, Your Honor. So the court could resolve disputed facts? That's correct, Your Honor. What facts did your client put forward in response to this challenge to show that he had in fact complied with all of the requirements to apply? The requirements stated on the website. Your Honor, so I would like to note that we submitted a verified complaint. So the complaint itself is record evidence, which is somewhat unusual, but done in a lot of these race discrimination claims, at least by my law firm. So the record, so the complaint itself is record evidence. And we also submitted, I believe, two different affidavits below. And even the district court below made a factual finding that at least for the purposes of this motion, my client had filed tax returns on January 13th. So- Did your client provide any evidence to show that he had submitted a file 2020 tax return? Your Honor, so what we submitted below was a declaration by Mr. Gump that said what had happened here. So I walked through that the application period was open on January 3rd. He submitted an application on January 6th. He received the confirmation email that said if additional information was needed, they would reach back out. He also had reviewed the website, which had very similar language. And then on January 13th, he filed his tax returns. Those tax returns were accepted by the IRS on January 14th, and the application window closed on January 20th. And so had they needed more information, they could have reached out and he could have very easily provided it, but that never happened. And that never happened despite the fact that my law firm even wrote a demand letter saying we think there's something illegal going on here. And there was still never any response about any lack of completeness on the part of the application. Until this lawsuit was well underway, Your Honor. And that was not-  Is that a no, that your client never provided evidence to the district court that he had, in fact, submitted to the defendant a filed 2020 tax return? A no with some context, Your Honor. But we do not contend that there was a submitted, filed tax return with this application. Just that he could have done it had he been asked. And that he could have done it because he had it prior to the close of the application period. I think- Did the website not give him clear notice of what was required for a complete application? I mean, the argument here seems to be it's not fair. They didn't tell us what was wrong with it. It was not my duty to fix it. Your Honor, if you could give me one second. I want to see if I can find some of the pages from the brief. So I'm looking at page 14 of our brief, and the eligibility requirements were described differently at different points in this process. So there was an email, which I believe is how my client originally learned of this program, that didn't make this distinction based on stated or filed returns. So we have a screenshot showing that email on page 14, and then we walk through why our client satisfied that. Now, similarly, if we go to page 17 of our brief, there's our acquired documents section of the email he received, and then there's our acquired documents section of the website. Which, again, are different lists. So I do think it's reasonable to think that applicants, particularly small businesses, which is what we're talking about here. We're not talking about Microsoft or businesses that have big, sophisticated compliance departments. But small businesses who are struggling financially in the midst of a pandemic could make simple mistakes as they uploaded forms, which I think is why there was an opportunity to cure that was discussed and that we pointed out below. But I thought your argument is also, though, that it didn't have to, there's not a requirement for you to have standing that you complied with every aspect of the process. Until we know whether or not other people also complied with every aspect of the process. Whether you, and then also separate and apart from that, a stigma injury doesn't require that you comply with every, that you even fully apply for the job. So the opportunity you have to fully apply, but we don't know offhand whether the, because we don't have contemporaneous rejection information as part of the pleadings. Whether your client was rejected for that reason or not, that's not part of the pleading. And, but for the stigma injury, it's not required at all. Is, am I wrong on that? And what am I missing? No, I don't think, I think that's a very good summary, Your Honor. So the stigmatic injury, and I think this can be helpful to think about temporally. The stigmatic injury occurred when the application was actually rejected on the basis of race, on the basis of the scoring methodology. That is the moment in time that the stigma attached. I thought it attaches whenever you post a job that says preferences are going to be given based upon this other thing. That that's where, because you can look at that and see that my race is less valued for the job. That, I thought that's when the stigma happens. Am I wrong on that? I think that's potentially correct too, Your Honor. But this is an even more compelling fact pattern, because we have an applicant who actually did take the time to apply. And that brings me to another point, turning to the opportunity injury. So the idea that an opportunity was missed here. I think it's important that whatever rule of law this court sets does not inadvertently punish someone who actually applies. Because you do not need to apply to have standing, right? And I think this goes back to what you were just saying, Your Honor. You do not typically need to apply. You just need to show that for the opportunity injury prong of this, that you were able and ready. And that had you applied, there'd be a discriminatory barrier. And in fact, in a lot of the college admissions cases, there weren't applicants. There weren't actual applicants who had applied. I got five seconds left. I look forward to speaking with you more on rebuttal. Thank you. Thank you. We'll now hear from Mr. Lane. May it please the court. Neil Lane, Norton Rose Fulbright on behalf of Digital Desk, and I'll be speaking for ten minutes. Plaintiffs lack standing to bring this action because Digital Desk was not eligible to participate. For reasons that have nothing to do with race or gender. The Digital Desk did not submit, as was required, a 2020 filed return. This was a process that involved thousands of applicants. And there were basic requirements, including that a 2020 filed return be filed. At the time that the program opened, Digital Desk hadn't filed a return for 2020. At the time it submitted the application, it hadn't filed a return. Despite the fact that in the application, Digital Desk said, verifies it, it had filed a complete application. That means the 2020 return was filed with it. Even at the point, and by the way, there is much made by Digital Desk that later it filed a 2020 filed return. But that filed return wasn't provided to the program at the time of the application, at the time of the valuation of the application, at the time that the funds went out. And even when Digital Desk filed this suit, paragraph 15 of the verified complaint says that it filed a complete application with the returns that were required. And in fact, we did not learn that it had not, that it had later filed a return until a response to the 12B1 motion. How do we know that others that didn't file the return weren't actually considered or given an opportunity to correct and contacted within the five days? We don't, and also relatedly, why wouldn't this have been, this is not the normal 12B because it brings in additional facts that are contested that you had to have that form in order to be qualified. And it merges with the facts on the record. So really it would be 12B6, and we can't do 12B6 here with this record. And so it would have to go be a summary judgment merits question that merges. So that's two, that's about three questions. Okay, those are two questions. I'm going to go for the first, I'm going to go for the second one first, and the first one second. 12B1 can be decided on disputed facts. There can be narrow disputed facts. But not where they're dispositive with the merits of the federal claim. But they will if they go to standing. And in this case, the case is morphed in the questioning and in the responses. From a case about whether I'm treated the same as other eligible applicants, to whether I, an ineligible applicant, am being treated the same as all other ineligible applicants. In other words, the question your honor asked was, well how do we know other people were not ineligible and that somehow their ineligibility was cured, that's really not the question, that wasn't what was pled. And for instance, I do want to clarify, the word stigma appears nowhere in the complaint. This was not a stigma case as pled. And what this case was pled as was, he said that I had filed a 2020 file complaint. And then the suggestion in response to the motion to dismiss on jurisdiction by plaintiffs was, well this is some kind of pretext, this is some kind of post hoc justification. And I will say Judge Pulliam took that very seriously. He dug in. He looked for the reasons, he found that the reasons, it was a reasonable requirement, it was important. This was a once in a century pandemic. How do we know that that was the reason that he was rejected? He looked into the reason why this applicant, why these applicants were not eligible, okay? He didn't look in, he didn't get into the merits discovery. He looked into the issue of whether, in the first instance, the applicant was eligible. And he addressed the eligibility requirement. So for instance, even in, plaintiffs discuss a lot of cases that are set aside cases. Where courts have for various reasons said, we're not going to make you file a complete application, we're not going to make you pursue it. Because they've set aside certain contracts, or set aside certain slots you'll never get. We're not going to make you go through that exercise. This is not a set aside case, this is a scoring case. So this is more like Dunn at Bay by the Seventh Circuit case. This applicant wasn't discouraged from applying, this applicant applied. And what, for instance, in Dunn at Bay, what they found, that the plaintiff there, Dunn at Bay, was ineligible for reasons that had nothing to do with race or gender. And therefore, lacked standing. And that's the case here. To have standing, to be in this program, they had to file a 2020 filed return. And they did not pursue it. We need to know that though. What's that? We need to know whether you really did have to have filed it at that initial stage. Or whether you could get some special, a leg up help. So the district court did actually go into and made findings of fact that are subject to a clearly erroneous standard. And found this was a requirement at the outside of the program. It was reasonable that no reasonable person would have- No discovery was done on that. So how could the district court have, they didn't get into their records and say, this is an application of this other person who is in the qualified group of the protected class. And they didn't have their form done. But they still got to continue on and they had a dialogue with them. And followed up and called them and said, you need to get this paperwork in. Because we want to support people that are in these protected classes. What the court found was, in this program, which involved thousands of applicants, that this was a material requirement. And the failure- How did the court find that though without there being discovery? And letting them look at the books and saying, this is how we picked people. There was no, there's no discovery to support the court's finding. So let me just say, if the court looks at U.S. Magistrate Judge Farrar's hearing, okay. The plaintiffs went to the hearing. The plaintiffs talked about discovery. But they were talking about merits discovery. What the magistrate judge said to them, Judge Farrar said to them was, if you have some jurisdictional discovery that you believe you need, bring it to us. Okay, bring it to us. Confer with the other side. Bring it, you know, tell us what jurisdictional discovery you seek. So it's not on, we cannot shift the burden onto the defendants in this case to disprove standing on the part of the plaintiff. It's the plaintiff's burden to prove standing. The plaintiff had the opportunity to seek- Yeah, they came in and they applied for a job. What they did was, they falsely said on their application that their application was complete. It was not. There was no 2020 filed return. That was a material requirement. They also falsely said in their verified complaint, paragraph 15, that they had included all the things, including the necessary returns in their application. It wasn't until later, and after the program was over, the money was distributed, the evaluations had occurred. This is not an ongoing program like some of the other cases, particularly the set-aside cases. It's over. It was over by the time they filed the lawsuit. It was a temporary program arising from a once-in-a-century pandemic. Mr. Lane, I have a couple of questions. Yes. Did the plaintiff here initially tell the district court that no jurisdictional discovery was required? It was purely a legal issue? They raised jurisdictional discovery, and for discovery, this was referred to Judge Farrar. Right. Farrar. And it was referred to Judge Farrar, and it was discussed in two separate hearings. They're both attached and submitted with the brief. And actually, Judge Farrar said, what do you need? Tell me what you need as far as jurisdictional discovery. The first hearing, he said, I don't think we need it. The second hearing, he said, well, we'd like this. The judge said, I'm not talking about merits discovery. If you need jurisdictional discovery, come and bring it to me. So that issue, the failure to have access to discovery, they were never denied access. That was not preserved, and that would have been a discretion, abusive discretion standard, even if it was. Didn't he give them an opportunity to submit what discovery they thought they needed for the jurisdictional issue? I think when you look at the second hearing, he urged them. He encouraged them. Come forward. If you think you need jurisdictional discovery, bring it to me. Did they do that? They did not do that. My second question relates to whether the issues for the jurisdictional issue are intertwined with the merits. Are they the same? The standing issue, it's intertwined in the sense of, if Digital Desk was not eligible to participate for reasons having nothing to do with race or gender, it wouldn't have a claim and it wouldn't have standing. So in this case, it hadn't filed the necessary 2020 filed return. So could we say that in order to determine the standing, we looked at the plaintiff's conduct, but in order to look at the merits, we would have to look at the defendant's conduct? If they had standing to challenge the conduct, you'd have to look at the defendant's conduct. But in this case, they didn't get out of the chute. It would be as if, even in the most, in Northeast Florida, the most favorable case, the Meseticide case. I think that even Justice Thomas would say, if the contractor didn't have a contractor's license or didn't have the basic eligibility to participate, they can't challenge their denial of the opportunity to participate. So you look at the issue separately, in other words, for the jurisdiction versus the merits? Yeah, in this case, there is a little bit of overlap because they didn't have standing, so they couldn't challenge the merits on the merits. Thank you. Can you stay for just a second? Yes, I'm happy to stay. Could you talk about the stigma? I know that, I'm looking at the complaint. It talks about how eligible applicants with higher scores would be funded before eligible applicants with lower scores. Some applicants, despite being otherwise eligible, would not receive a grant because of the relatively low score, and it's a scoring methodology that's outlined. And it does screenshots from the thing discussing the scoring methodology, so that's on the website. So you see where I'm going with this. It shows that the discriminatory thing is on the face of the website, and then it says at the end that defendant's actions in implementing the scoring methodology constitutes a racial animus towards disfavored groups. Construed broadly, could that be a stigma case? And if so, why wouldn't he have standing to raise a stigma case? So in my view, no, it's not a stigma case. Well, first off, he still has to be eligible in order to make that merits argument, okay? But he has to be able to apply. In this case, in the set-aside cases, those were plaintiffs often who, there was no way they were going to get the benefit that they were seeking because they were not a part of the class. Here is where there's a scorecard. He obviously knew he could apply. He actually did apply. There were numerous factors that were taken into account in the scoring methodology, including geographic location, veteran status, among others. In this case, the stigma claim, I would suggest that it wasn't pled for a reason I don't know that at the end of the day that saves an applicant who does not have the basic entry into the program. The whole notion of stigma arose initially as a, in relation to a badge of inferiority that were placed on people who were not entitled to equal protection. We're given second substandard schools, substandard services. Then later on, Justice Thomas spoke of this stigma that was attached to recipients of affirmative action. People who actually received the benefits of these programs, okay? And then the question here would be, would Mr. Gahm as a white man be stigmatized because he did not receive an assistance, that he did not receive this program if he were to get into the merits? The problem is, he obviously knew he could apply. He was entitled to apply. It's a scorecard case. It's not a set-aside case. But when he came to apply, he did not have, according to a finding that's subject to a clearly erroneous standard, he didn't have the basic eligibility to apply, which was he hadn't filed a 2020 tax return, and then he didn't attach the filed return to his application. So you're saying that even for a stigma case, that he would have to have a proper application that met all the requirements? I believe in this case, he would need to have, he would need, in other words, even if it was a, again, I'll say even in the case of Northeast Florida general contractors, if it turned out that it was a butcher, a baker, or a candlestick maker that was trying to participate in the program, they wouldn't be able to say, I am stigmatized because I'm not permitted to, I'm not eligible to participate in the program. Thank you. Mr. Christian. Yes, Your Honor, thank you. William Christian on behalf of Bexar County. Let me pick up on the stigma injury that you were discussing with Mr. Lane. In the Walker versus City of Mesquite case out of this court that's cited in the briefing, this court held that stigmatizing injury accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct. So I don't think you have standing on a stigma theory just because you see the methodology, know it exists, and are offended by it. You have to show that you were denied equal treatment as a result of the alleged stigmatizing conduct. In this case, the fact that the plaintiffs were not eligible shows that they did not, they were not denied equal treatment under the methodology because they did not submit that filed tax return. Also, Your Honor, I don't have the case names with me. I know this court has dealt with Confederate symbols cases. People upset that they existed and people upset that people were trying to take them down. And those cases have been consistently dismissed for lack of standing because the stigmatic injury doesn't lead to an unequal treatment by the government to the particular plaintiffs. For instance, I think there's a case involving the old Mississippi flag which had a Confederate symbol on it. A man brought suit complaining of how stigmatized and offended he was to see that in courtrooms and other government buildings. The court held that that is not enough to have standing, that alleged stigmatic injury. There has to be an actual unequal treatment by the government to you that you suffer to have that concrete injury. So in a sense, I think the standing inquiry like the district court held kind of collapses into the same inquiry. Were they eligible for this program for a non-discriminatory reason? No, they were not eligible for this program because they didn't submit the file 2020 tax return. If they had asked for discovery, which I'm going to ask them about, would they have been entitled to discovery on the standing issue that that's a pretext? If they had said, we don't think you're really requiring these tax forms to be sent in at the same time and you let them come in later for other people that are in the protected, the six point extra people, then should they have had that if they had asked, but it's just their failure to have done that. Yeah, I think if they'd asked, it certainly would have been in the district court's discretion to grant that. Of course, any discovery ruling like that is subject to the court's discretion, abuse of discretion standard. Because it would show whether that was true or not, that that's the reason that he was declined. And then I think as Mr. Lane outlined for the court before the magistrate judge, they did ask for that discovery. And at the encouragement of the magistrate judge, don't wait for the judge to rule on this. Everybody, let me know if we need some discovery. I'm happy to entertain that request. They never pursued it to a final ruling as they went through. The judge said, get me the discovery request you want to see. Let me look at them and I'll approve them or narrow them down or whatever. And they never followed up on that. And they never appealed any of the magistrate's rulings to district court. This court doesn't review magistrate rulings directly, only after they've been appealed to the district court and ruled on. So without any final ruling, without pursuing this matter to actual denial of the discovery request, I would submit there's nothing for this court to review or overturn on the basis of how discovery was handled in the district court. Have you seen the tax return yet? Yes, I've seen the file tax return. And when did you, in the course of this litigation, obtain a copy of it, of his actual tax return? He submitted his actual tax return in the response to our motion to dismiss. So that's how it got into evidence. And that brings us to another factual finding that I was entitled to a deference by the district court was that, one, there was no reasonable applicant would think that submitting the unfiled tax return equates to submitting a required tax return. And that there were material differences between what he submitted and what he filed. And this is not just a technical requirement, but it was an important part of the process. The whole point of this program was to provide public funds to businesses that had suffered losses during the pandemic. To verify those losses occurred, a filed tax return is the best evidence of that. And so it's reasonable to require an applicant to submit that so that the program, before they distribute these public funds, can know whether the business has lost money in compliance with the program's requirements. But you understand that something may say something facially, but not actually be a requirement of the program. In fact, we are aware now that many, many such funds were distributed to lots and lots of ineligible people who didn't actually have businesses. And I'm not talking about in your program, but in the- Yes. So lots of people may have had stated requirements and not used them and distributed money wildly during this time period. All right, and there is no evidence that this program did it. Was one of those kinds. And- Are you standing here today to defend this six points extra? Your Honor, if we get to the merits, it'll be our burden to do so under strict scrutiny for the racial category and intermediate scrutiny perhaps for the gender category. It's a tough burden for us to do, but we will do what we can to do it. These programs, minority and women business owned entities have, the programs that I've often provided set asides for them or preferences for them. And there's a established case law for how those matters are reviewed and ruled upon. And should we get to the merits, we will address it in due course. But- I'm sorry, go ahead. But again, the way this, the posture of this case before the district court, the fact that it was a factual attack on the jurisdiction of the court, meant two things. One, the burden was on the plaintiff to introduce evidence to establish standing. And two, the district court's resolution of the facts in its opinion are subject to clear error review and entitled to deference. And those two combinations, I think, lead to affirmance of the court's ruling. Do you think that the jurisdictional analysis is intertwined with the merits analysis here, or are they separate analyses? They're separate analyses because the 2020 tax return issue has nothing to do with the race or the gender or the scoring methodology or anything else that they're complaining about in the merits of their claim. It is a separate, non-discriminatory eligibility requirement that they did not meet. And your honor, I would point you to the front page of the application that they completed. It's page 92 of the record. It says applicants without filed 2019 and 2020 business tax returns are not eligible, period. So the court was certainly justified in making a finding that that was the eligibility requirement of this program. And of course, it's undisputed that this applicant didn't meet that. The court found that they were ineligible from the moment they submitted that application all the way through the end of the program. At no point were they eligible for a grant. Without that eligibility, there was no basis for the plaintiff to have standing to complain about how the program was administered. Does the record show how many applicants were rejected on the basis of no tax return? The record does not show that, your honor. Does not show that. Because there's no discovery on that. There's no discovery on that, again. And you say that's their problem. That is their problem. By making this factual attack, it put the burden on the plaintiffs to establish, introduce sufficient evidence for the court to conclude that there was standing. They did not do so in this case. Thank you, your honor. Your honors, I have four points that I'd like to make in rebuttal. And I'll start by just noting, I'm a former appellate court clerk, and I know it's unusual to go and read the briefing below. But it might be helpful here, because the briefing below will show that there was a very narrow, factual dispute, all centered around whether taxes had been filed and when they had been filed. A lot of the other stuff that has perhaps been talked about as a basis for denying standing was not in dispute. And also in terms of- Does that lessen the need for jurisdictional discovery then? Well, it does, in my opinion, your honor, because first off, both sides below talked about if you want to go beyond this narrow dispute, there's a need for discovery. In fact, the reply brief below of the defendants said, this is their second header. Their second header, in the alternative, jurisdictional discovery is necessary regarding plaintiff's eligibility. Which is largely what we said, too. If there's more to it, then let's do the jurisdictional discovery and figure it out. Can you submit jurisdictional discovery request about whether the tax returns were really required or not? Your honor, on the record that we did submit, we submitted the statements about there being a cure period. And there was no response to that whatsoever in the reply brief. So I know there were some statements in the district court's opinion to the effect of that cure period might not have applied to tax returns, but again, that wasn't even a factual, that wasn't even a fact that was put in dispute below. So on the narrow facts before us, it seemed like it was most prudent to just let the district, especially with both parties agreeing there'd be a need for jurisdictional discovery, to just deny the motion. And then we'll proceed in the ordinary course, perhaps starting with jurisdictional discovery, then going to further. The magistrate judge specifically say you need to get it done now before the ruling is made. That's actually not quite what the magistrate says. The magistrate was saying there might be, so the magistrate was particularly talking about what was the actual reason for the denial. And I specifically said in that hearing, I don't understand there to be any dispute about the actual reason for the denial. The question before the district court is whether a post hoc review would in fact justify denying standing in this case. And for that reason, I think both sides agreed that under this very limited fact pattern, there really shouldn't have been a need to get into a lot of these points. Just to turn to my other points, I do want to emphasize, as this court has already pointed out, that there's a very liberal pleading standard. Just a short and plain statement. All of the facts necessary to allege a stigmatic injury are there. And pleading is not just a magic word game where the absence of that word is going to make- I don't understand why it wasn't. If the magistrate judge said, don't you want to know why they actually denied your client? Why you didn't want to know why they actually denied, because that could have been helpful. Because if they denied your client for some other reason, or they actually did do the scoring, or they didn't even notice about the taxes, then that would have been spot on important to say that that doesn't prevent your standing or your merits. And that's why they're intertwined, frankly. I don't understand why you didn't want that information, or why that wasn't crucial to your case. Your Honor, at ROA 79, which is the motion to dismiss, the other side said, and I'm quoting, regardless of digital desk's priority score under the methodology used by the program, therefore, digital desk was not eligible to receive a grant. So their argument is that a score was in fact, this application was in fact scored, it was given a lower score on the basis of race. And the question of whether, which is what the magistrate was wondering about, is there a dispute about the actual reason for the denial, was not in dispute. On a third point, Your Honor, with 20 seconds left here, a lot of this does go to causation, which is really a merits issue. And then the final point, when they're talking about stigmatic injury requires someone to have been personally denied. Here, it's our position that there was, in fact, personal denial. Our client has an email that says the scoring methodology was applied to him. Thank you for your time this morning, and I would ask that you reverse the district court. Where is that email? What is that, where is that in the record? The confirmation email, Your Honor? Mm-hm. Can you give me just one second? I can get that for you. It says, the email says he was denied for the scoring methodology. Does it say that? Yes, it does. So if you look at page six of our reply brief, Your Honor, we actually put a screenshot of it. And I believe that's ROA 15, or it might be ROA 16. But you can see the screenshot itself on page six of the reply brief, Your Honor. And it says that is the reason he was denied. It does, Your Honor. So if I can quote it, the grant application review process was completed using the methodology outlined on Baxter County Small Business Assistant Grant website in the scoring methodology section. And then on page seven, we put the scoring methodology screenshot from the website. So on page six and seven of our reply brief is where those- But that doesn't say he was denied because of that, does it? Well, it's a personalized email to him. It starts out Robert, so he goes by R. Greg Gum, but his legal name's Robert. So it starts out Robert, and it says, Robert, thank you for your interest in the program. And then there's nothing in there about the lack of a completed application or anything to that effect, Your Honor. And then the only thing it says is, as a plausible reason for denial, is that the funds have been exhausted, there's no funds left. And that the application process relied on this scoring methodology, Your Honor. And again, Your Honor, I don't think there's a dispute about whether a score was in fact applied in this case. I think this case would have looked a lot different if the other side came forward and said, we reviewed the application file. Here's a letter in the application file, or a note in the application file, that says the application was incomplete. And I'm well over my time, Your Honor. Thank you. Thank you. We have your argument. We appreciate all the arguments in this case, and it is submitted. The next case for today is 2024-10592, Jane Depp.